YESENIA GALLEGOS (SBN 231852)
ygallegos@mwe.com
MARJORIE SOTO GARCIA (SBN 313290)
mcsotogarcia@mwe.com
EVAN KROLL (SBN 333754)
ekroll@mwe.com
**MCDERMOTT WILL & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067-3206
Telephone:  +1 310 277 4110

Attorneys for Defendants
DART CONTAINER CORPORATION OF
CALIFORNIA and DART CONTAINER
CORPORATION

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC GONZALEZ, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DART CONTAINER CORPORATION OF CALIFORNIA, a corporation; DART CONTAINER CORPORATION; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.<br><br>**DEFENDANTS DART CONTAINER CORPORATION OF CALIFORNIA AND DART CONTAINER CORPORATION'S NOTICE OF REMOVAL TO FEDERAL COURT**<br><br>Complaint Filed:  June 20, 2025<br>FAC Filed:  July 14, 2025 |

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants DART CONTAINER CORPORATION OF CALIFORNIA ("Dart Container California") and DART CONTAINER CORPORATION ("Dart Container") (Dart Container California and Dart Container are collectively "Defendants"), hereby remove the matter of *Eric Gonzalez v. Dart Container Corporation of California and Dart Container Corporation* (Riverside County Superior Court, Case No. CVRI2503315) to the United States District Court for the Central District of California based on the Court's removal jurisdiction under 28 U.S.C. §§ 1441(a) and (b), and the Court's jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") and 28 U.S.C. § 1332(d)(2), on the grounds that it is a civil class action wherein the amount in controversy exceeds the sum of $5,000,000, there are at least one hundred putative class members, and at least one plaintiff is a citizen of a different state than at least one of the defendants.

## BACKGROUND

In accordance with 28 U.S.C. § 1446(a), the following is a short and plain statement of the grounds for removal of the case and a listing of pleadings to date.

1. On June 20, 2025, Plaintiff Eric Gonzalez ("Plaintiff") filed a Class Action Complaint ("Complaint") against Dart Container California in the Superior Court of the State of California, County of Riverside, case no. CRVI2503315.

2. On July 14, 2025, Plaintiff filed a First Amended Complaint to add Dart Container as a party to the Action ("FAC").

3. On August 19, 2025, Plaintiff personally served the Summons, Complaint, FAC, and Civil Case Cover Sheet on Defendants' respective agents for service of process. Attached to the Declaration of Marjorie Soto Garcia ("Soto Garcia Decl."), filed concurrently herewith as **Exhibit A and B,** are true and correct copies of the Complaint and the FAC. (Soto Garcia Decl., ¶ 4, Ex. A and B.) Attached to the

1

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

Declaration of Marjorie Soto Garcia, as **Exhibit C**, are true and correct copies of the Summons and all other papers Plaintiff served on Defendants. (Soto Garcia Decl., ¶ 4, Ex. C.)

4.      Plaintiff's FAC alleges the following eight causes of action against Defendants: (1) Unfair Competition; (2) Failure to Pay Minimum Wages; (3) Failure to Pay Overtime Wages; (4) Failure to Provide Required Meal Periods; (5) Failure to Provide Required Rest Periods; (6) Failure to Provide Accurate Itemized Statements; (7) Failure to Reimburse Employees; and (8) Failure to Pay Sick Pay Wages.

5.      Attached to the Declaration of Marjorie Soto Garcia, as **Exhibit D**, is a true and correct copy of Defendants' timely served Answer to Plaintiff's FAC, which was filed on September 17, 2025. (Soto Garcia Decl., ¶ 6, Ex. D.)

6.      Attached to the Declaration of Marjorie Soto Garcia, as **Exhibit E** is a true and correct copy of Plaintiff's case management statement. In this statement, Plaintiff represented to the state court on September 2, 2025 that it had not served Defendants. However, Defendants were served with the FAC on August 19, 2025. (Soto Garcia Decl., ¶ 7, Ex. E.)

7.      Attached to the Declaration of Marjorie Soto Garcia, as **Exhibit F**, are the remainder of the documents filed in the State Court Action as of the instant removal. (Soto Garcia Decl., ¶ 8, Ex. F.)

8.      Exhibits A, B, C, D, E and F constitute all pleadings, service of process and matters filed in the State Court Action.

9.      Attached to the Declaration of Marjorie Soto Garcia, as **Exhibit G**, is a true and correct copy of Plaintiff's counsel's declaration of their hourly attorneys' fees in connection with a United States Eastern District Court of California matter, styled *Esmeralda Lizbeth Mendez Lozano et al. v. Cornerstone Building Brands, Inc. et al.,* Case No. 2:21-cv-01017-TLN-JDP. (Soto Garcia Decl., ¶ 10, Ex. G.)

10.     In connection with Dart Container California's internal and privileged investigation, Dart Container California created an excel sheet of California non-

McDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

exempt employees in its Corona, California location at the direction of counsel, which included the employees' names, hire and separation dates (where applicable), and last known hourly rates (the "Dart Corona List"). (Soto Garcia Decl., ¶ 11) (Gomez Decl. ¶ 6.)

11.     This Notice has been filed in a timely manner pursuant to 28 U.S.C. § 1446(b)(3), as this Notice has been filed within 30 days of receipt of "other paper from which it may first be ascertained that the case is . . . removable." 28 U.S.C. § 1446(b). For purposes of the statute, Plaintiff served Defendants with the FAC on August 19, 2025. (*See* **Exhibit C**.) Because this Notice has been filed within 30 days of service of Plaintiff's FAC, it is timely.

## SUBJECT MATTER JURISDICTION

12.     This case is brought by Plaintiff as a class action. Specifically, Plaintiff seeks to represent one class and one sub class: (1) Defendants' current and former non-exempt employees during the period beginning four (4) years prior to the filing of the Complaint, denoted by Plaintiff as the "CALIFORNIA CLASS"; and (2) Defendant's current, and former employees who are members of the CALIFORNIA CLASS and were/are classified as non-exempt employees at any time during the period three (3) years prior to the filing of the Complaint, denoted by Plaintiff as the "CALIFORNIA LABOR SUB-CLASS."

13.     Because Plaintiff's FAC is styled as a putative class action as defined by 28 U.S.C. § 1332(d)(1)(B), this Court has original jurisdiction under CAFA. CAFA provides, in relevant part, that the district courts have original jurisdiction over any class action, brought under state or federal law, in which (a) the number of members of all proposed plaintiff classes in the aggregate is at least 100; (b) any member of the class of plaintiffs is a citizen of a State different from any defendant; and (c) the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2).

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

**NUMEROSITY OF CLASS MEMBERS**

14.    Although Plaintiff does not allege a specific number of class members for each of the alleged class or sub class, it is beyond all reasonable dispute that the total number of class members is in excess of 100. The number of members of the CALIFORNIA CLASS alone totals at least 669 individuals. (Declaration of Lana Salas ("Salas Decl.") at ¶ 4.)

**CITIZENSHIP OF THE PARTIES**

15.    Diversity is sufficiently established under CAFA where, as here, any single member of a class of plaintiffs is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2)(A). Because Plaintiff is a citizen of California and at least one defendant is a citizen of a different state, minimal diversity is present.

16.    Plaintiff alleges that he currently is, and at all times relevant to his action was, an individual employed by Defendants in California. Throughout his employment, Plaintiff lived at Fontana, California, which is in San Bernadino County, California. (Declaration of Teresa Gomez ("Gomez Decl.") at ¶7.) Therefore, Defendants allege on information and belief that, at the time the Complaint was filed in Riverside County Superior Court, Plaintiff was and continues to be a citizen of the State of California.

17.    As of June 20, 2025, the day on which Plaintiff filed the Complaint, Dart Container California was a Michigan corporation with its principal place of business in Mason, Michigan. (Gomez Decl. ¶ 3.) Dart Container California continues to be a Michigan corporation with its principal place of business in Mason, Michigan. *Id.* To be clear, Mason, Michigan is the site of Dart Container California's corporate headquarters and Dart Container California's core executive, and administrative functions are directed from Mason, Michigan. *See id*. Accordingly, Dart Container California's principal place of business is in Michigan under the "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Accordingly, Dart Container California is a citizen of Michigan.

- 4 -
DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

MCDERMOTT WILL & SCHULTE LLP
ATTORNEYS AT LAW
LOS ANGELES

18. As of June 20, 2025, the day on which Plaintiff filed the Complaint, Dart Container Corporation was a Nevada corporation with its principal place of business in Mason, Michigan. (Gomez Decl. ¶ 4.) Dart Container Corporation continues to be a Nevada corporation with its principal place of business in Mason, Michigan. *Id.* To be clear, Mason, Michigan is the site of Dart Container Corporation's corporate headquarters and Dart Container Corporation's core executive, and administrative functions are directed from Mason, Michigan. *See id.* Accordingly, Dart Container Corporation's principal place of business is in Michigan under the "nerve center" test. *Hertz*, 559 U.S. at 77. Accordingly, Dart Container Corporation is a citizen of Nevada and Michigan.

19. Pursuant to 28 U.S.C. § 1441(b)(1), all potential "Doe" defendants shall be disregarded for purposes of removal. To that end, the allegations in the Complaint and FAC with respect to the potential "Doe" defendants are too vague as to their identity or relationship to the claims. *See* **Exhibit A**, FAC, ¶ 8.

20. Therefore, at the time the Complaint was filed in Riverside County Superior Court, and at the time of removal, Defendants were, and continue to be, citizens of the State of Michigan and Nevada, and Plaintiff was, and continues to be, a citizen of the State of California. As such, the parties are diverse.

## JURISDICTIONAL MINIMUM

21. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Defendants are not obliged to "research, state, and prove the plaintiff's claims for damages." *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Conrad Assoc. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998). A defendant can establish the amount in controversy by the allegations in the complaint, or by setting forth facts in the notice of removal that demonstrate that the amount placed in controversy by the plaintiff exceeds the jurisdictional minimum. *Singer*, 116

F.3d at 377; *Conrad Assoc.*, 994 F. Supp. at 1198.[1]

22.     In measuring the amount in controversy, a court **must** assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the complaint, not what the defendants will actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).

23.     Plaintiff does not pray for a specific dollar amount in his FAC. When the amount in controversy is not readily apparent from the complaint, "the court may consider facts in the removal petition" to determine the potential damages at issue. *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer*, 116 F.3d at 377 (9th Cir. 1997)). Statutory penalties may be considered by the Court when determining the amount in controversy. *See Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000). The Court should also include requests for attorneys' fees in determining the amount in controversy. *Fritsch v. Swift Transportation Company of Arizona*, LLC, 899 F.3d 785, 794 (2018) (holding that "future attorneys' fees should be included in the amount in controversy"). With respect to CAFA, "when the defendant relies on a chain of reasoning that includes assumptions to satisfy its burden of proof [as to CAFA's amount-in controversy requirement], the

---

[1] A notice of removal need only provide a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Because Section 1446 tracks Rule 8's liberal pleading standard, a notice of removal need only allege the grounds plausibly and need not be supported by evidentiary submissions. *See Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S.Ct. 547, 554 (2014) ("[i]n sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."); *see also Roa v. TS Staffing Servs., Inc.*, Case No. 2:14-CV-08424-ODW, 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015) ("[t]he 'short and plain statement' language from § 1446(a) applies to the entire notice of removal, and therefore would apply equally to all CAFA allegations and not just the amount-in-controversy requirement.").

chain of reasoning and its underlying assumptions must be reasonable." *LaCross v. Knight Transp. Inc.,* 775 F.3d 1200, 1201 (9th Cir. 2015).

24.    Defendants deny Plaintiff's claims in their entirety and assert that they are not amenable to class treatment, but provide the following analysis of potential damages, without admitting liability, in order to demonstrate that Plaintiff's FAC puts a sufficient amount "in controversy" to warrant removal under 28 U.S.C. § 1332(d).

## A.    Putative Exposure on Meal And Rest Break

25.    **The estimated amount in controversy for Plaintiff's meal and rest break claims alone is $4,317,084.10.** When a complaint is silent on the meal and rest period violation rates, California Federal Courts have found several different assumptions reasonable based on the allegations in the complaint. *Powell v. USI Ins. Servs., LLC*, 2023 WL 6276578, at *4 (C.D. Cal. Sept. 25, 2023) (in connection with a contention in the complaint that the employer "sometimes, but not always" violated meal and rest break laws "the Court finds a 60% violation rate for the meal period allegation and a 30% violation rate for the rest period allegation proper"). Courts have found "violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' or 'policy and practice' allegation." *Avila v. Rue21, Inc.,* 432 F. Supp. 3d 1175, 1189 (E.D. Cal. 2020) (finding a 40% violation rate reasonable based upon the "pattern and practice" allegation); *see also Sanchez v. Abbott Lab'y*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at *5 (E.D. Cal. June 30, 2021) (finding a 40% violation rate for a meal period claim and 20% violation rate for a rest period claim to be reasonable because of "pattern and practice" allegations); *Olson v. Becton, Dickinson & Co*., No. 19CV865-MMA (BGS), 2019 WL 4673329, at *5 (S.D. Cal. Sept. 25, 2019) (finding a 25% violation rate to be appropriate for the plaintiff's meal and rest period claims based on the "pattern and practice" allegation); *Elizarraz v. United Rentals, Inc*., No. 2:18-CV-09533-ODW (JC), 2019 WL 1553664, at *4 (C.D. Cal. Apr. 9, 2019) (finding a 50% violation rate for a meal period claim and 25% violation rate for a rest period claim to be reasonable because of "pattern and

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

practice" allegations). The Ninth Circuit's recent decision made it abundantly clear: Defendants need not provide evidence to support their reasonable assumption of the violation rates stemming from its interpretation of the allegations in the FAC. *Perez v. Rose Hills Co.*, 131 F.4th 804, 808 (9th Cir. 2025) ("it makes little sense to require a CAFA defendant to introduce evidence of the violation rate").

26.    Based on the reasonable estimate that there are at least 69,884 work weeks for the putative class members within the class period, Plaintiff's Fourth Cause of Action for Failure to Provide Required Meal Periods implicates between $863,416.82 and $4,317,084.10 in controversy (69,884 work weeks x 5 workdays per work week x $24.71 meal period premium for missed meal periods x % violation rate) (Salas Decl.) at ¶¶ 6 and 9.) The table below is instructive in demonstrating the various amounts in controversy based on different violation rates for Plaintiff's meal period claim:

| Percentage Assumption | Amount in Controversy |
|---|---|
| 10% | $863,416.82 |
| 25% | $2,158,542.05 |
| 50% | $4,317,084.10 |

27.    Based on the reasonable estimate that there are at least 69,884 work weeks for the putative class members within the class period, Plaintiff's Fifth Cause of Action for Failure to Provide Required Rest Periods implicates between $863,416.82 and $4,317,084.10 in controversy (69,884 work weeks x 5 workdays per work week x $24.71 rest period premium for missed rest periods x % violation rate). The table below is instructive in demonstrating the various amounts in controversy based on different violation rates for Plaintiff's rest period claim:

| Percentage Assumption | Amount in Controversy |
|---|---|

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

| | |
|---|---|
| 10% | $863,416.82 |
| 25% | $2,158,542.05 |
| 50% | $4,317,084.10 |

**B.      Putative Exposure on Overtime Pay**

28.      **The estimated amount in controversy for Plaintiff's unpaid overtime claim alone is $2,590,250.46.** Similar to meal and rest period assumptions, when a complaint is silent on how much overtime time is allegedly due, California Federal Courts permit employers to reasonably assume that the complaint claims at least one hour of unpaid overtime was worked. *Graham v. IFCO Sys. N.A., Inc.*, No. EDCV1700074SJOSPX, 2017 WL 1243498, at *5 (C.D. Cal. Mar. 3, 2017) ("[t]he Court finds that one hour of unpaid overtime per putative class member per week is a reasonable assumption for purposes of calculating the amount in controversy"). *See also Jasso v. Money Mart Express, Inc.*, No.11–CV–5500 YGR, 2012 WL 699465, at *5 (N.D. Cal. Mar. 1, 2012) (one hour of overtime per workweek was reasonable given plaintiff's allegations of a "uniform policy and scheme" and that putative class members worked over 8 hours per day and/or 40 hours in a week); *Jimenez v. Allstate Ins. Co.*, No. CV 10–8486 AHM (FFMx), 2011 WL 65764, at *3 (C.D. Cal. Jan. 7, 2011) (estimate of one hour of unpaid overtime per workweek was reasonable based on allegation of "consistent" overtime work).

29.      Based on the reasonable estimate that there are 69,884.00 total work weeks for the putative class members within the class period, Plaintiff's Third Cause of Action for Failure to Pay Overtime Wages implicates at least **$2,590,250.46** in controversy ($24.71 average hourly rate x 69,884 total work weeks x 1 hour of unpaid overtime for each work week x 1.5 overtime premium). The following table shows that regardless of whether each class member worked 30 minutes, one hour, or one and a half hours of overtime, the amount in controversy based on this claim is significant:

| Hours OT Per Week | Amount in |
|---|---|

- 9 -

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

|  | Controversy |
|---|---|
| .5 | $1,295,125.23 |
| 1.0 | $2,590,250.46 |
| 1.5 | $3,885,375.69 |

## C. Putative Exposure on Failure to Pay Minimum Wages

30. **The estimated amount in controversy for Plaintiff's failure to pay minimum wages alone is $669,000.** In Plaintiff's Second Cause of Action for Failure to Pay Minimum Wages, he seeks "recovery of all unpaid wages, according to proof, interest, statutory costs, as well . . . any statutory penalties . . . and [w]aiting time penalties." (FAC at ¶ 71.) If Plaintiff and class members prevail on the Second Cause of Action, they may each be entitled to their actual damages or $1,000, whichever is greater. 15 U.S.C. § 1681n (a)(1). Accordingly, Plaintiff seeks at least $1,000 for himself and each member of the CALIFORNIA LABOR SUB-CLASS. Given this number of putative class members, this means the amount in controversy with respect to this claim is at least $66 ($1,000 per putative violation x 669 putative class members).

## D. Putative Exposure on Accurate Itemized Wage Statements

31. **The estimated amount in controversy for Plaintiff's wage statement claim alone is $786,650.** In Plaintiff's Sixth Cause of Action for Failure to Provide Accurate Itemized Wage Statements, he alleges that Defendants failed to provide him and the other California Labor Sub-Class members with complete and accurate wage statements. Plaintiff seeks to recover penalties pursuant to California Labor Code section 226 on behalf of himself and the applicable putative class members. (FAC at ¶ 99.) California Labor Code section 226 provides for employees who did not receive accurate itemized wage statements to recover a penalty equivalent to $50 for the first violation and $100 for each subsequent violation, up to $4,000 per harmed individual.

McDermott Will & Schulte LLP
Attorneys at Law
Los Angeles

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

McDermott Will & Schulte LLP
Attorneys At Law
Los Angeles

Cal. Lab. Code § 226. Based on the reasonable estimate that there are 357 putative class members within the class period, Plaintiff's Sixth Cause of Action implicates at least $786,650 in controversy ((357 x $50 initial penalty) + ($100 subsequent penalty x 7,688)).

## E. Putative Exposure on Failure to Reimburse Business Expenses

32. **The estimated amount in controversy for Plaintiff's business expense reimbursement claim alone is $349,420.** Plaintiff's FAC alleges that he and the putative class were not reimbursed for "costs related to use of their personal cellular phones." (FAC, ¶ 21.) Based on the reasonable assumption that Plaintiff's FAC alleges that each employee is entitled to $5 in unreimbursed expenses per week (roughly $20 per month), Plaintiff's Seventh Cause of Action for Failure to Reimburse implicates at least $349,420 in controversy (69,884 workweeks x $5 in unpaid expenses a week).

## F. Putative Exposure on Attorneys' Fees

33. **The estimated exposure for Plaintiff's attorneys' fees alone is $1,206,757.22.** Defendants reasonably assume that Plaintiff's FAC puts in controversy attorneys' fees in the reasonable amount that would be approximately 25 percent of the damages amount. *Smadja v. PetSmart, Inc.,* 2019 WL 1744857, at *3 (C.D. Cal. Jan. 15, 2019). Therefore, based on a reasonable calculation, Plaintiff's attorneys' fees and costs implicate at least **$1,206,757.22** in controversy (25% of the **$4,827,028.87** damage award set forth above). In the alternative, even when applying a lodestar methodology for calculating attorneys' fees, Plaintiff's counsel is reasonably expected to work *at least* 1,500 hours for a class action from its origin to conclusion of trial, and Plaintiff's counsel rates were recently approved at $850/hr for partners and $450/hr for associate attorneys. ($650 average hourly rate x 1,500 = $975,000) (Soto Garcia Decl., ¶ 10, Ex. G.)

34. Although Defendants deny that any amounts are due to any putative class members (or even that there is a valid class to be certified), the aggregate of the

calculations above amounts to $6,033,786.09 - $17,905,767.36, broken down as follows:

| Claim | Amount in Controversy |
|---|---|
| Missed Meal Periods | $863,416.82 - $4,317,084.10 |
| Missed Rest Periods | $863,416.82 - $4,317,084.10 |
| Unpaid Overtime | $1,295,125.23 - $3,885,375.69 |
| Failure to Pay Minimum Wages | $669,000 |
| Itemized Wage Statements | $786,650.00 |
| Unreimbursed Expenses | $349,420.00 |
| Attorneys' Fees | $1,206,757.22 - $3,581,153.47 |
| **TOTALS** | $6,033,786.09 - $17,905,767.36 |

35.     Thus, CAFA threshold is met without even factoring in the amount in controversy associated with all other claims – including, but not limited to, failure to properly pay sick pay. As such, removal pursuant to CAFA is undoubtedly appropriate and proper.

DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT

## VENUE

36.    This action is currently pending in the Superior Court of California in the County of Riverside and, therefore, venue in this Court is proper pursuant to 28 U.S.C. § 84(a), 28 U.S.C. § 1391(a), and LR 3-2(e).

## NOTICE OF REMOVAL

37.    Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California, County of Riverside, in the State-Court Action. In addition, Plaintiff, via counsel, has been served with this Notice of Removal and supporting pleadings. (Soto Garcia Decl., ¶ 12.)

WHEREFORE, Defendants hereby remove this action from the Superior Court of the State of California, County of Riverside, to the United States District Court for the Central District of California.

Dated: September 18, 2025          Respectfully submitted,

**MCDERMOTT WILL & SCHULTE LLP**


By:    */s/  Marjorie Soto Garcia*
        YESENIA GALLEGOS
        MARJORIE SOTO GARCIA
        EVAN KROLL
        Attorneys for Defendants
        DART CONTAINER CORPORATION
        OF CALIFORNIA and DART
        CONTAINER CORPORATION

- 13 -
DEFENDANTS' NOTICE OF REMOVAL TO FEDERAL COURT